# IN THE SUPREME COURT OF IOWA

No. 13–1403

Filed February 27, 2015

Amended May 7, 2015

**STATE OF IOWA,**

Appellee,

vs.

**MAX V. THORNDIKE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

Defendant appeals his conviction for lascivious acts with a child pursuant to Iowa Code section 709.8, claiming ineffective assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, Sean M. Corpstein, Student Legal Intern, Michael J. Walton, County Attorney, and Jerald Feuerbach, Assistant County Attorney, for appellee.

**ZAGER, Justice.**

Max Thorndike appeals his conviction for two counts of sexual abuse in the second degree pursuant to Iowa Code section 709.3 (2013), and one count of lascivious acts with a child pursuant to Iowa Code section 709.8. He maintains there was insufficient evidence to support the jury's finding that he committed sex acts with the minor victims. Further, he asserts the district court erred in denying his motion for new trial because it applied the incorrect legal standard in concluding the weight of the evidence supported his convictions. He also asserts the district court abused its discretion in concluding the weight of the evidence supported his convictions. Finally, he maintains his trial counsel was ineffective in failing to object to the lascivious-acts jury instruction he claims was not supported by sufficient evidence. We transferred the case to the court of appeals, which affirmed the convictions. Thorndike applied for further review, which we granted.

When we grant further review of a decision of the court of appeals, we have discretion to select issues for our consideration. *See* Iowa R. App. P. 6.1103(1)(*d*). In this appeal, we consider only whether Thorndike's trial counsel was ineffective in failing to object to the lascivious-acts jury instruction he claims was not supported by sufficient evidence. Therefore, we let the court of appeals' affirmance on the remaining issues stand as the final decision of this court. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). With respect to Thorndike's claim that trial counsel was ineffective in failing to object to the lascivious-acts jury instruction, we conclude Thorndike has failed to establish he suffered prejudice as a result of counsel's failure to object to the instruction. We affirm the decision of the court of appeals and the judgment of the district court.

## I.  Background Facts and Proceedings.

In December 2012, Thorndike was living with his son, Joseph, Joseph's girlfriend, Tiffany, and their four-year-old son, N.T., in a duplex located in Davenport, Iowa.  On the evening of December 15, Joseph and Tiffany attended a graduation party along with their friends, A.C. and M.C., and Thorndike.  While at the party, the adults had arranged for a babysitter to care for N.T. and the friends' twin daughters, Jo.S. and Ja.S.  Jo.S. and Ja.S. were six years old at the time.

While at the party, Joseph received a phone call from his landlord who lived in the other half of the duplex.  The landlord told Joseph the children were being loud and it sounded like N.T. was out of control.  The adults convened to discuss the issue.  Ultimately, it was decided that Thorndike would return to the duplex to calm the children.  Thorndike then left the party and returned to the duplex.  A.C. and M.C. left the party at approximately 2:00 a.m. so that M.C. could attend to a work-related matter.  The couple then returned to their home.  The twins stayed at the duplex for the night.

The next morning, M.C. went to the duplex to pick up the twins.  On the ride home, the twins told M.C. they needed to tell him something.  The twins then informed M.C. that after Thorndike had returned from the party the previous night, he had entered Joseph and Tiffany's room where they were sleeping and made each of them touch his "private part."  The police were contacted soon thereafter.

The State charged Thorndike with two counts of sexual abuse in the second degree pursuant to Iowa Code section 709.3 and one count of lascivious acts with a child pursuant to Iowa Code section 709.8.  Thorndike entered a plea of not guilty to each of the charges.

At trial, both Ja.S. and Jo.S. testified that on the evening in question, Thorndike came into the room in which they were sleeping, walked to the sides of the bed, and briefly made each of them touch his "private part." Neither twin testified that Thorndike touched their genital or pubic regions, and the State presented no other evidence to that effect at trial.

After the close of evidence, the district court provided the jury with the following instruction, quoted in relevant part, regarding the charge of lascivious acts with a child:

> [T]he State must prove each of the following elements of Lascivious Acts with a Child:
>
> 1. On or about the 15th day of December, 2012, the Defendant, with or without Ja.S. or Jo.S's consent:
>
> > (a) fondled or touched the pubes or genitals of Ja.S. or Jo.S.; or
> >
> > (b) permitted or caused Ja.S. or Jo.S to fondle or touch the Defendant's genitals or pubes.
>
> 2. The Defendant did so with the specific intent to arouse or satisfy the sexual desires of the Defendant or Ja.S. or Jo.S.
>
> 3. The Defendant was then 16 years of age or older.
>
> 4. Ja.S. or Jo.S. was under the age of 12 years.

The jury was further instructed:

> Where two or more alternative theories are presented, or where two or more facts would produce the same result, the law does not require each juror to agree as to which theory or fact leads to his or her verdict. It is the verdict itself which must be unanimous, not the theory of facts upon which it is based.

During the State's closing argument, the attorney for the State explained to the jury the elements necessary to sustain a conviction for lascivious acts with a child. Specifically, he stated:

From the evidence in this case we're talking late in the evening of December 15 . . . [t]hat one of two things happened. And here the first one, (a), probably doesn't apply. We are talking about the second one, "permitted or caused Ja.S. or Jo.S. to fondle or touch the Defendant's genitalia or pubes."

On June 13, 2013, the jury returned its verdicts finding Thorndike guilty of each of the charged offenses. With respect to the charge of lascivious acts with a child, the jury's verdict was on a general verdict form.

Thorndike appealed, and we transferred the case to the court of appeals. On appeal Thorndike asserted, among other things, that trial counsel was ineffective in failing to object to the alternative offered in the lascivious-acts jury instruction 1(a) because the State had failed to present sufficient evidence to instruct that Thorndike fondled or touched the pubes or genitals of Ja.S. or Jo.S. Thorndike argued that because the jury returned its verdict on a general verdict form, there was no way of knowing on which basis the jury rendered its verdict. Therefore, Thorndike argued, he was entitled to a new trial. The court of appeals rejected Thorndike's ineffective-assistance-of-counsel claim. It reasoned the jury instruction was a correct statement of the law and that Thorndike had failed to show prejudice even if counsel should have objected to the instruction.

Thorndike applied for further review, which we granted.

**II. Standard of Review.**

We review ineffective-assistance-of-counsel claims de novo. *Clay*, 824 N.W.2d at 494. This is because such claims are grounded in the Sixth Amendment to the United States Constitution.[1] *Id.* In a criminal

---

[1]In his brief, Thorndike cites both the Sixth Amendment and article I, section 10 of the Iowa Constitution in support of his ineffective-assistance-of-counsel claim. Thorndike does not argue that we should interpret article I, section 10 differently than

case, an ineffective-assistance-of-counsel claim "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1). However, a defendant may raise such a claim on direct appeal if he or she has "reasonable grounds to believe that the record is adequate to address the claim on direct appeal." *Id.* § 814.7(2). Ordinarily, we preserve such claims for postconviction relief proceedings. *Clay*, 824 N.W.2d at 494. "We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." *State v. Tate*, 710 N.W.2d 237, 240 (Iowa 2006). "We will resolve the claims on direct appeal only when the record is adequate." *Clay*, 824 N.W.2d at 494. In this case, the record is adequate for us to address the merits of Thorndike's ineffective-assistance-of-counsel claim. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008) (concluding record was adequate to address ineffective-assistance-of-counsel claim on direct appeal when defendant asserted counsel was ineffective in failing to object to superfluous aiding-and-abetting instruction); *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) ("A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal.").

## III. Discussion.

To succeed on a claim of ineffective assistance of counsel, a claimant must establish by a preponderance of the evidence: " '(1) his trial counsel failed to perform an essential duty, and (2) this failure

---

the parallel provisions of the Sixth Amendment. Thus, for purposes of our analysis we assume that the legal principles governing both provisions are the same. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 76 n.3 (Iowa 2010).

resulted in prejudice.' " *State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012) (quoting *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006)); *accord Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. Thus, reversal is warranted only where a claimant makes a showing of both of these elements. *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 75–76 (Iowa 2010). If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element. *See Clay*, 824 N.W.2d at 501 n.2 ("The court always has the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently.").

Under the first prong, " 'we measure counsel's performance against the standard of a reasonably competent practitioner.' " *Id.* at 495 (quoting *Maxwell*, 743 N.W.2d at 195). It is presumed the attorney performed his or her duties competently, and the claimant must successfully rebut this presumption by establishing by a preponderance of the evidence that counsel failed to perform an essential duty. *Id.* We assess counsel's performance "objectively by determining whether [it] was reasonable, under prevailing professional norms, considering all the circumstances." *State v. Lyman*, 776 N.W.2d 865, 878 (Iowa 2010).

Under the second prong, the claimant must establish that prejudice resulted from counsel's failure to perform an essential duty. *Clay*, 824 N.W.2d at 496. The claimant must show "counsel's errors were so serious as to deprive [him or her] of a fair trial." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693. A showing that the

error "conceivably could have influenced the outcome" of the proceeding is insufficient. *See id.* at 693, 104 S. Ct. at 2067, 80 L. Ed. 2d at 697. Rather, the effect must be affirmatively demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; *accord King v. State*, 797 N.W.2d 565, 572 (Iowa 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. The claimant must prove prejudice by a preponderance of the evidence. *Clay*, 824 N.W.2d at 496. The ultimate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068–69, 80 L. Ed. 2d at 698; *accord Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012).

Thorndike argues his trial counsel was ineffective in failing to object to the lascivious-acts jury instruction, specifically alternative instruction 1(a), because the State failed to present sufficient evidence to prove Thorndike fondled or touched the pubes or genitals of Ja.S. or Jo.S. He maintains that he suffered prejudice because the jury returned its verdict on a general verdict form such that there is no way of knowing on which basis the jury rendered its verdict. More specifically, Thorndike argues there is a reasonable probability the jury found him guilty on the basis that he fondled or touched the pubes or genitals of Ja.S. or Jo.S.— a basis not supported by the evidence—instead of on the basis that he caused Ja.S. or Jo.S to fondle or touch his genitals or pubes—a basis supported by the evidence. Because we conclude this case can be

decided under the prejudice prong of *Strickland*, we now turn to this analysis.

At the outset, it is important to note that this case comes before us in the context of an ineffective-assistance-of-counsel claim, as opposed to a direct appeal objecting to the legality of a jury instruction. Thorndike is correct in his assertion that on numerous prior occasions we have stated that " '[w]ith a general verdict of guilty, we have no way of determining which theory the jury accepted.' " *State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997) (alteration in original) (quoting *State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996)); *see also, e.g., State v. Lathrop*, 781 N.W.2d 288, 297 (Iowa 2010) ("When circumstances make it impossible for the court to determine whether a verdict rests on a valid legal basis or on an alternative invalid basis, we give the defendant the benefit of the doubt and assume the verdict is based on the invalid ground."); *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006) ("When a general verdict does not reveal the basis for a guilty verdict, reversal is required."); *State v. Pilcher*, 242 N.W.2d 348, 354–56 (Iowa 1976) (holding reversal was required when general verdict did not specify the alternative upon which the jury based its verdict and one of the alternatives was unconstitutional); *State v. Mays*, 204 N.W.2d 862, 865 (Iowa 1973) ("The present case falls under the principle that an instruction submitting an issue unsubstantiated by evidence is generally prejudicial."). However, as we have previously explained,

> We have made it clear that ineffective-assistance-of-counsel claims based on failure to preserve error are not to be reviewed on the basis of whether the claimed error would have required reversal if it had been preserved at trial. Rather, a defendant must demonstrate a breach of an essential duty and prejudice. In ineffective-assistance-of-counsel claims "the instruction complained of [must be] of

such a nature that the resulting conviction violate[s] due process."

*Maxwell*, 743 N.W.2d at 196 (alterations in original) (citations omitted) (quoting *State v. Hill*, 449 N.W.2d 626, 629 (Iowa 1989)); *accord State v. Tejeda*, 677 N.W.2d 744, 754–55 (Iowa 2004) ("It is true that we have said that an instruction submitting an issue unsubstantiated by evidence is generally prejudicial. Unlike the case at bar, however, [those cases] were decided on direct appeal, and not in the ineffective-assistance-of-counsel context." (Citations and internal quotation marks omitted.)); *State v. Broughton*, 450 N.W.2d 874, 876 (Iowa 1990) (" '[T]he facial appeal of [the defendant's argument] . . . is diminished in most situations where practical considerations make it unlikely that the inclusion of a particular element in the marshaling instruction would have produced any difference in the verdict of the jury.' " (quoting *State v. Propps*, 376 N.W.2d 619, 623 (Iowa 1985))). Thus, given the nature of Thorndike's claim, he must affirmatively demonstrate counsel's alleged deficiency undermines our confidence in the verdict and therefore resulted in prejudice entitling him to a new trial, regardless of whether his claim would require reversal if it were before us on direct appeal. *See Maxwell*, 743 N.W.2d at 196–97 (requiring defendant to affirmatively demonstrate prejudice when counsel failed to object to a superfluous aiding-and-abetting instruction given to the jury by the district court and concluding defendant failed to demonstrate the necessary prejudice to succeed on his ineffective-assistance-of-counsel claim because it was unlikely the "instruction had any effect on the jury's decision").

As we have previously stated,

> When the submission of a superfluous jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred, in the context of an ineffective-assistance-of-counsel

> claim, no prejudice results. Further, when there is no suggestion the instruction contradicts another instruction or misstates the law there cannot be a showing of prejudice for purposes of an ineffective-assistance-of-counsel claim.

*Id.* at 197 (citation omitted).

In this case, the alternative offered in the lascivious-acts jury instruction 1(a) did not contradict another instruction given to the jury or misstate the law. A person commits the offense of lascivious acts with a child when he or she, with or without a child's consent, "[f]ondle[s] or touch[es] the pubes or genitals of a child," *or* "[p]ermit[s] or cause[s] a child to fondle or touch the person's genitals or pubes." Iowa Code § 709.8(1)–(2). This is precisely the instruction the district court gave to the jury. It was a correct statement of the law.

Further, even if counsel had objected to the superfluous alternative offered in the lascivious-acts jury instruction 1(a), we are not convinced on this record there is a reasonable probability the outcome of the proceeding would have been different. If trial counsel had objected to the jury instruction, the district court simply would have removed the offending language and otherwise provided the same instructions to the jury. We are confident the jury would have returned the same verdict of guilty for a number of reasons. First, the record in this case is devoid of any evidence that would have allowed the jury to find that Thorndike fondled or touched the pubes or genitals of Ja.S. or Jo.S. Rather, the only evidence the State presented to the jury was evidence showing Thorndike caused Ja.S. or Jo.S to fondle or touch *his* genitals or pubes. *See Maxwell,* 743 N.W.2d at 197 (concluding defendant failed to establish the necessary prejudice to succeed on his ineffective-assistance-of-counsel claim when the record was "devoid of any evidence" that would have allowed the jury to find the defendant guilty based on an

unsupported alternative). Second, during closing argument, the State told the jury alternative 1(a) "probably doesn't apply" and then stated, "[W]e are talking about the second one, 'permitted or caused Ja.S. or Jo.S. to fondle or touch the Defendant's genitalia or pubes.' "[2] If the State had presented any evidence to the jury suggesting alternative 1(a) applied, or made any argument suggesting a conviction on that basis would be proper, this case would pose a much closer question. *See Stromberg v. California*, 283 U.S. 359, 368, 51 S. Ct. 532, 535, 75 L. Ed. 1117, 1122 (1931) (recognizing that when one of three alternatives upon which the jury could base its verdict was invalid and "the State's attorney . . . emphatically urged upon the jury that they could convict the appellant under the [invalid] clause alone," the likelihood the jury reached its verdict on an invalid alternative was, as a practical matter, greater). But here, the State presented *no* evidence to the jury that could support a conviction under alternative 1(a). Likewise, it made no argument to the jury that the unsupported alternative applied. Rather, the State effectively removed that alternative from the jury's consideration during its closing argument. Under this record, our confidence in the jury's verdict is not undermined.

Based on the record before us, we cannot conclude Thorndike's conviction resulted from a breakdown in the adversary process that renders the result unreliable. We are confident the jury reached its verdict on the proper basis and that substantial evidence supports the verdict. Thorndike has failed to establish the necessary prejudice to

_____

[2]Once the State recognized that one of the alternatives contained in the jury instruction "probably doesn't apply," the better practice would have been to advise the court and counsel of this fact and have the jury instruction modified to eliminate the alternative.

succeed on his ineffective-assistance-of-counsel claim. Thus, Thorndike has failed to prove he received ineffective assistance of counsel.

### IV. Conclusion.

We conclude that Thorndike has failed to establish he suffered prejudice as a result of counsel's failure to object to the lascivious-acts jury instruction, specifically alternative instruction 1(a). Thus, Thorndike's ineffective-assistance-of-counsel claim must fail. We affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**